JON D. MEER (State Bar No. 144389)
jmeer@seyfarth.com
MYRA B. VILLAMOR (State Bar No. 232912)
mvillamor@seyfarth.com
**SEYFARTH SHAW LLP**
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
HANESBRANDS INC.

LYNN HUBBARD III (SBN 69773)
SCOTTLYNN J HUBBARD IV (SBN 212970)
usdceast@hubslaw.com
**DISABLED ADVOCACY GROUP, APLC**
12 Williamsburg Lane
Chico, California 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244

Attorneys for Plaintiff
LARY FEEZOR

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARY FEEZOR,<br><br>Plaintiff,<br><br>v.<br><br>GARY L. PATTERSON … HANESBRANDS DIRECT, LLC , et al.,<br><br>Defendants. | Case No.: 2:10-CV-01165 FCD-GGH<br><br>[*Hon. Frank C. Damrell, Jr., Ctrm 2*]<br><br>**JOINT STATEMENT RE. DISCOVERY DISAGREEMENT**<br><br>Date: May 12, 2011<br>Time: 10:00 a.m.<br>Ctrm: 9, 13th Floor<br><br>Complaint filed: May 12, 2010<br>FAC filed: April 26, 2011<br>Pretrial Conference: March 16, 2012<br>Trial: May 22, 2012 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. THE PARTIES HAVE MET AND CONFERRED REGARDING THE SITE INSPECTION DEMAND ..... 1

III. STATEMENT OF THE NATURE OF THE CASE ..... 2

A. Plaintiff's Complaint And Procedural History ..... 2

IV. DISPUTED DISCOVERY: PLAINTIFF'S SITE INSPECTION DEMAND ..... 4

V. DEFENDANT'S POSITION ..... 5

A. Plaintiff Lacks Standing To Pursue His Claims Against Defendant And Inspect Defendant's Store ..... 6

B. Plaintiff's First Amended Complaint Does Not Demonstrate Standing ..... 10

C. Because Plaintiff Cannot Establish Standing As To Any Of The Alleged Barriers, Plaintiff Cannot Challenge Any Unencountered Or Unknown Barriers That May Be Discovered In The Requested Site Inspection And Should Therefore Be Barred From Inspecting Plaintiff's Store ..... 11

D. If Plaintiff Is Allowed To Proceed With The Site Inspection, The Inspection Should Be Limited In Scope ..... 12

E. Defendant's Conclusion ..... 13

VI. PLAINTIFF'S CONTENTIONS ..... 13

A. The Honorable Frank C. Damrell, Jr., Has Already Held That Defendant's Position – *i.e.*, Feezor Lacked Standing Because He Could Enter Their Stores And Make His Purchases – Is "Unpersuasive" And A "Misapplication" Of Ninth Circuit Authority. ..... 14

B. Hanes And Eddie Bauer's Interpretation Of The Ninth Circuit's Holding In *Doran v. 7-Eleven, Inc.* Runs Afoul Of The Plain Text Of That Opinion, The Ninth Circuit's Analysis Of The Same In *Chapman v. Pier 1 Imports*, And Should, Thus, Be Rejected As Baseless And Unfounded. ..... 16

C. Defendants Never Met And Conferred On Their Proposed Limits For The Site Inspection And We Would Ask The Court To Disregard This Eleventh Hour Issue. ..... 18

VII. DEFENDANT'S CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 571 F.3d 853 (9th Cir. 2009) ....16, 17

*Chapman v. Pier One Imports, Inc.*, 631 F.3d 939 (9th Cir. 2011) ....3, 6, 7, 10, 11, 14, 15, 16, 17

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) ....6, 7, 11, 12, 16, 17

*Feezor v. Patterson*, 2011 WL 1466897 (E.D. Cal. Apr. 18, 2011)....13, 14, 16, 17

*Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d (S.D. Cal. 2006)....10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....6

*White v. Divine Investments, Inc.*, 2005 WL 2491543 (E.D. Cal., Oct. 7, 2005) ....10

**FEDERAL STATUTES**

42 U.S.C. § 12181 (7) ....4

42 U.S.C. § 12182 (B)(2)(A)(iv) ....4

42 U.S.C. § 12188(a)(2)....10

**STATE STATUTES**

Title III of the Americans with Disability Act of 1990 ....1, 2

**RULES**

FRCP 12(b)(1) ....10

Local Rule 251....1, 19

Rule 34....3, 15

Rule 56(d) ....3, 5, 6, 7, 13, 14, 15

Rule 56(f)....3

**CONSTITUTIONAL PROVISIONS**

Article III of the U.S. Constitution ....6, 7, 11, 17

**DEFENDANT'S CONTENTIONS**

## I. INTRODUCTION

In May 2010, Plaintiff Lary Feezor filed a lawsuit against Defendant Hanesbrands and seven other defendants with operations at the Shasta Factory Outlets in Anderson, California, alleging violations of Title III of the ADA. In March 2011, Plaintiff propounded a demand to inspect Defendant Hanesbrands' store at the Shasta Factory Outlets in order "to photograph, videotape, document, measure, and survey barriers (both policy and architectural) relating to plaintiff's specific disability."

Defendant maintains that Plaintiff lacks standing to pursue his claims against Defendant, and therefore lacks standing to conduct the site inspection. Defendant further maintains that Plaintiff's site inspection demand amounts to an improper fishing expedition. Defendant therefore objected to the demand and filed a Motion for Protective Order prohibiting the inspection or, in the alternative, staying Plaintiff's inspection unless and until Plaintiff establishes that he has standing to pursue his claims against Defendant, and limiting the scope of the inspection in the event Plaintiff establishes standing.

After meeting and conferring, the parties remain unable to agree as to the proper disposition of Plaintiff's site inspection demand.

## II. THE PARTIES HAVE MET AND CONFERRED REGARDING THE SITE INSPECTION DEMAND

Pursuant to the meet and confer requirements of Local Rule 251, on April 6, 2011, Defendant's counsel sent a letter to Plaintiff's counsel regarding Plaintiff's demand to inspect Defendant's outlet store in Anderson, California. On April 7, counsel for the parties conferred telephonically regarding the basis and scope of Plaintiff's inspection demand. On April 11, Defendant's counsel sent another letter to Plaintiff's counsel regarding the inspection demand, and confirming that Defendant would move forward with filing a motion for protective order given Plaintiff's refusal to withdraw the demand.[1]

---

[1] Declaration of Myra B. Villamor, ¶¶ 2-4, Exs. A-B.

Defendant filed its Notice of Motion and Motion for Protective Order on April 18.[2] On April 25, Defendant's counsel sent a letter to Plaintiff's counsel inquiring into the status of Plaintiff's First Amended Complaint ("FAC") because a review of the operative complaint was necessary to complete the Joint Statement Re. Discovery Disagreement in order to determine whether Plaintiff had established standing.[3] Plaintiff filed his FAC on April 26.[4]

## III. STATEMENT OF THE NATURE OF THE CASE

### A. Plaintiff's Complaint And Procedural History

On May 12, 2010, Plaintiff filed a Complaint against Defendant Hanesbrands and seven other defendants alleging that during his visit to the Shasta Factory Outlets in Anderson, California, he encountered barriers that interfered with his ability to use and enjoy the facilities.[5] He alleges that Defendant violated Title III of the Americans with Disability Act of 1990, the California Disabled Persons Act, the Unruh Civil Rights Act, and the California Health & Safety Code. He identified the following four "barriers" that he alleges he encountered at Defendant's store:

- There is no ISA mounted at the entrance;
- The entrance door has inaccessible "panel" handles:
- The counter is too high with no portion lowered to accomdate [*sic*] a patron in a wheelchair; and,
- The pay point machine is too high.[6]

Defendants Hanesbrands, Eddie Bauer, and Gary L. Patterson deposed Plaintiff in October 2010, and questioned Plaintiff regarding the alleged barriers he encountered during the visit that triggered the filing of his Complaint.[7] On March 8, 2011, Hanesbrands and Eddie Bauer each filed a Motion for Summary Judgment ("MSJ") arguing that Plaintiff lacked

---

[2] Notice of Motion and Motion for Protective Order, April 18, 2011 (Dkt 52).
[3] Villamor Decl. ¶ 5, Ex. C.
[4] Plaintiff's First Amended Complaint, April 26, 2011 (Dkt 54).
[5] *See* Plaintiff Complaint, May 12, 2010 (Dkt. 1).
[6] Plaintiff Complaint (Dkt. 1), ¶ 31.
[7] Villamor Decl. ¶ 6, Ex. D.

standing.[8] In response, Plaintiff filed a Motion to Amend the Complaint on March 14, followed by an Application for Rule 56(f) Continuance on March 18.[9]

Plaintiff sought to amend his Complaint to in order to comply with the pleading standard for ADA claims as set forth in *Chapman v. Pier One Imports, Inc.*, 631 F.3d 939, 954 (9th Cir. 2011), which held that an ADA plaintiff must plead with particularity the specific barriers that he encountered "and how [plaintiff's] disability was affected by them so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement" to establish standing to pursue his claims.

In his Application for Rule 56(f) Continuance, Plaintiff asserted that he needed additional time to conduct the following discovery in order to oppose the MSJs: "(1) inspect Eddie and Hanes' stores; (2) identify and document the barriers alleged in plaintiff's complaint; (3) obtain expert testimony on those barriers; (4) and copy building records evincing when these stores were designed, constructed, or altered."[10] Plaintiff concurrently served Hanesbrands with the Rule 34 site inspection demand that is at issue in the instant Motion for Protective Order.[11]

On April 18, 2011, the Court granted Plaintiff's Motion to Amend and his Application for Rule 56(d) Continuance,[12] and Plaintiff filed his FAC on April 26, 2011.[13] In his FAC, Plaintiff identifies the same exact barriers he identified in his original Complaint:

> 28. To the extent known by Feezor, the barriers at the LHBP [Hanesbrands] Facility included, but are not limited to, the following:
>
> · There is no ISA mounted at the entrance that would indicate to Plaintiff that the facility is intended to be accessible to him;
>
> · The entrance door has inaccessible "panel" handles making it difficult for Plaintiff to use and enter the facility;

---

[8] Hanesbrands' Motion for Summary Judgment, March 8, 2011 (Dkt. 31); Eddie Bauer's Motion for Summary Judgment, March 8, 2011 (Dkt. 30).
[9] Plaintiff's Motion to Amend Complaint, March 14, 2011 (Dkt. 32); Plaintiff's Application for Rule 56(f) Continuance of MSJ hearing date, March 18, 2011 (Dkt. 34).
[10] Application for Rule 56(f) Continuance, March 18, 2011 (Dkt 34, 3:3-8); *see* Declaration of Lynn Hubbard, III in Support of Application for Rule 56(f) Continuance ("Hubbard Decl.") ¶ 3, March 18, 2011 (Dkt 34-1).
[11] Hubbard Decl. ¶¶ 6-7, Exs. A-B (Dkt 34-1)
[12] Memorandum and Order, April 18, 2011 (Dkt 50, p.8, n.4).
[13] Plaintiff's First Amended Complaint, April 26, 2011 (Dkt 54).

· The counter is too high with no portion lowered to accomdate [*sic*] a patron in a wheelchair, thus making the goods and services offered there difficult (if not impossible) for Plaintiff to use; and,

· The pay point machine is too high, thus making it difficult (if not impossible) for Plaintiff to reach and use.[14]

As discussed below, because the alleged barriers encountered by Plaintiff remain unchanged, Defendant maintains its position that Plaintiff lacks standing to pursue his claims.

## IV. DISPUTED DISCOVERY: PLAINTIFF'S SITE INSPECTION DEMAND

On March 18, 2011, Plaintiff served the following site inspection demand upon Defendant:

**REQUEST NO. 1:**

Plaintiff requests that you respond within thirty (30) days to the following requests:

That you permit plaintiff to enter any place of public accommodation, (as defined by 42 U. S. C. § 12181 (7)), that you own, operate or lease which is open to the public, at the address and time below. The purpose of this inspection is to photograph, videotape, document, measure, and survey barriers (both policy and architectural) relating to plaintiff's specific disability.

Because specific plans and cost estimates may be required to satisfy plaintiff's initial burden for a 42 U.S.C. § 12182 (B)(2)(A)(iv) claim, a contractor, architect firm , or survey crew (or all three) may perform this inspection.[15]

No destructive testing will occur and plaintiff will reschedule on seven day notice to a time that would be less disruptive to business operations.

| | |
|---|---|
| BUSINESS NAME: | L'EGGS/HANES/BALI/PLAYTEX STORE # 103 |
| ADDRESS: | 1953 State Highway 273 |
| CITY, STATE: | Anderson, CA 96007 |
| TIME: | 1:00 p.m. |
| DATE: | April 26, 2011 |

[14] FAC, ¶ 28 (Dkt 54).
[15] The demand included the following footnote: "If defendant would like to stipulate that barrier removal is "readily achievable" to remove, then specific design plans will not be necessary. Plaintiff's expert will then only identify barriers."

**RESPONSE TO REQUEST NO. 1:**

Defendant objects to this Request on the following grounds: Plaintiff lacks standing; the request will not lead to the discovery of relevant or admissible evidence; the request is overly broad, unduly burdensome, and oppressive; the request is intended to annoy, embarrass, and harass; the request lacks sufficient specificity as to the barriers Plaintiff seeks to inspect; and the request violates rights of privacy.[16]

## V. DEFENDANT'S POSITION

As demonstrated by Plaintiff's allegations in his Complaint and First Amended Complaint and Plaintiff's deposition testimony, Plaintiff cannot establish standing with respect to any of the barriers he claims he encountered during his visit to Defendant's store that triggered this lawsuit. The alleged barriers neither deterred nor prevented his full and equal enjoyment of the store, and, in any event, he testified that three of the four alleged barriers do not currently exist.

Without standing, not only is Plaintiff barred from proceeding with his claims against Defendant, Plaintiff cannot embark on what is clearly a fishing expedition by demanding an inspection of Defendant's store in order to discover whether there are any noncompliant barriers related to his particular disability that he did not encounter during his visit or of which he has no knowledge.

Defendant therefore moved this Court for a Protective Order prohibiting Plaintiff's inspection of Defendant's store or, in the alternative: (1) staying Plaintiff's inspection unless and until Plaintiff establishes that he has standing to pursue his claims against Defendant and (2) if Plaintiff establishes standing, and the inspection is allowed to go forward, limiting the scope of the inspection to only those alleged barriers specifically identified by Plaintiff in his Complaint

---

[16] Defendant further communicated its objections to the request in its letter of April 6, 2011 to Plaintiff's counsel "on the grounds that Plaintiff lacks standing to bring his claims against Defendants, as set forth in Defendants' Motions for Summary Judgment, Oppositions to Plaintiff's Motion to Amend Complaint, and Oppositions to Plaintiff's Application for Rule 56(d) Continuance" and on the grounds that "neither a site inspection nor an expert's inspection report will assist Plaintiff in opposing summary judgment or furthering his suit against Defendants." Villamor Decl., ¶ 2, Ex. A.

and FAC (as set forth in Plaintiff's Application for Rule 56(d) Continuance); requiring that the inspection take place outside of business hours in order to minimize the disruption to Defendant's business operations and avoid privacy issues that may arise should Plaintiff photograph Defendant's customers; and limiting the individuals who may attend the inspection to Plaintiff, Plaintiff's counsel, and Plaintiff's expert witness.

### A. <u>Plaintiff Lacks Standing To Pursue His Claims Against Defendant And Inspect Defendant's Store</u>

Plaintiff has the burden of establishing that he has standing to pursue his claims against Defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("The party invoking federal jurisdiction bears the burden of establishing" the elements of standing); *Chapman*, 631 F.3d at 946 ("as with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of litigation"). In determining whether there has been discrimination under the ADA, courts apply the jurisdictional requirement to show an "injury in fact" under Article III of the Constitution:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.
>
> Second, there must be a causal connection between the injury and the conduct complained of....
>
> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotation marks, citations, and footnote omitted). Thus, for Plaintiff to have standing here, he must show that he actually encountered a barrier to access that prevented him from patronizing the store or that he became aware of barriers to access that actually deterred him from patronizing Defendant's store.

The decision in *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008), sets forth the standard for standing based on an injury in fact in an ADA lawsuit. As the Ninth Circuit explained, an individual has standing based on an injury in fact if the individual:

> **Personally suffered** discrimination as the result of barriers in place during his visits to [the store] and that those barriers have deterred him … from patronizing the store.

*Id.* at 1040-1042 n.5 (emphasis added). The Court further held that:

> [A] disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one alleged statutory violation of which **he or she has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation** ....”

*Id.* at 1043-1044 (emphasis added). As the *Doran* Court further emphasized:

> In the ADA context, constitutional limits on standing ensure that we do not adjudicate a case where a plaintiff does not have an actual or imminent, concrete injury, caused by the discrimination challenged in the suit, which is redressed by judicial decision.... [T]he requirements of constitutional standing were met where the plaintiff encountered one barrier related to his disability and, because of that barrier and his attendant inability fully to access the facility, was deterred from entry to or full use of that facility ....

*Doran*, 524 F.3d at 1045. The Court then concluded that the plaintiff must personally encounter the barriers related to his disability, and because of the barrier, be unable to fully access the facility. *Id.* at 1047.

Here, Plaintiff cannot conduct the requested inspection of Defendant’s store because he cannot establish standing to pursue his claims against Defendant with respect to the barriers alleged in his Complaint and FAC.[17] As extensively briefed in Defendant’s MSJ (now off-calendar following the granting of Plaintiff’s Application for Rule 56(d) Continuance), Opposition to Motion to Amend, and Opposition to Application for Rule 56(d) Continuance,[18] Plaintiff’s allegations and deposition testimony clearly show that he lacks standing to pursue his claims against Defendant with respect to the barriers identified in the Complaint. Not only did Plaintiff fail to meet the pleading requirements set forth in *Chapman*, Plaintiff admitted that the barriers that he encountered during his visit to Defendant’s store, as alleged in his Complaint and

---

[17] The specific barriers alleged in the Complaint and FAC are identical. Plaintiff’s amended his complaint to add further descriptions of the alleged barriers in an attempt to show how each barrier affected Plaintiff’s particular disability. *See* Complaint, ¶ 31 (Dkt 1); FAC, ¶ 28 (Dkt 54).

[18] Hanesbrands’ MSJ, March 8, 2011 (Dkt 31); Hanesbrands’ Opposition to Motion to Amend, March 25, 2011 (Dkt 37); Hanesbrands’ Opposition to Application for Rule 56(d) Continuance, March 25, 2011 (Dkt 39).

FAC, did not deter or prevent his full and equal enjoyment of the store, and did not deter him from returning to the store.

Plaintiff stated that he had been to this particular Hanesbrands store and made purchases up to six times. (Pl. Dep. 135:4-14.) With regard to the first alleged barrier—"[t]here is no ISA mounted at the entrance"—Plaintiff conceded that the lack of an ISA sign has never barred or deterred him from entry or full use of the facility:

> Q. In each of those visits to the Hanes store you were able to get in and out of the store, collect the items that you wanted to buy, and purchase them at the pay station, right
>
> A. Yes, sir.

(Pl. Dep. 135:10-14.) Similarly, Plaintiff's allegation that "[t]he entrance door has inaccessible 'panel' handles," even if true, did not deter or prevent Plaintiff from entry or full use of the store:

> Q. Okay. The panel handles were still handles that you were able to grasp and open the door, correct?
>
> A. Yes, sir.

(Pl. Dep. 50:23-25.) As Plaintiff admitted, he was able to use the door handles without assistance:

> Q. During your prior visits to the Hanes stores were you able to open the doors yourself?
>
> A. Yes, sir.

(Pl. Dep. 136:5-7.) Similarly, despite Plaintiff's allegation that "[t]he counter is too high with no portion lowered to accommodate a patron in a wheelchair," he was not deterred or prevented from using the checkout stand to make purchases:

> Q. And during your visits to the Hanes store prior to October 20, 2010, you were able to have a clerk assist you at the checkout stands before the stand was lowered, correct?
>
> A. Yes, sir.

(Pl. Dep. 142:25-143:4.) And Plaintiff also admitted that even though the "[t]he pay point machine is too high," he was not prevented or deterred from making purchases:

> Q. You were able to take your merchandise to the pay station and place it at the pay station and pay for it, right?

A. Yes, sir.

(Pl. Dep. 132:1-4.)

**Plaintiff also admitted that none of the alleged "barriers" to accessibility existed by the time of his deposition on April 20, 2010, if they ever existed at all.** As Plaintiff testified, an ISA sign is currently mounted at the entrance:

> Q. And when you visited the store on October 20, 2010, there was an ISA sign properly displayed at the outside of the store, correct?
>
> A. Yes, sir.

(Pl. Dep. 133:15-18.) Plaintiff also conceded that the height of the checkout stand is compliant:

> Q. And when you visited the store on October 20, 2010, there was a checkout stand that you believed was the appropriate height for persons with a disability, right?
>
> A. Yes, sir. They lowered it.

(Pl. Dep. 133:19-22.) And the pay point machine is currently compliant:

> Q. And you also during your visit on October 20, 2010, observed that the pay point machine was appropriately operating for a person with a disability, correct?
>
> A. Yes, sir.

(Pl. Dep. 133:23-134:2.) As for the alleged non-compliant door handles, Plaintiff admits that he is unaware of what rule, if any, the handles violate, and that if the handles are "proper handles" he does not have a problem with them. (Pl. Dep. 160:18-161:17.) In any event, the handles have not deterred or prevented him from entering or exiting the Hanesbrands store. (Pl. Dep. 50:23-25; 135:10-14; 136:5-7; 137:1-4; 162:1-6, 14-25.)

Plaintiff therefore cannot dispute that none of the alleged "barriers" prevented or deterred him from full use and enjoyment of the Hanesbrands store. Plaintiff admitted that he was able to open the entrance door and enter the store (Pl. Dep. 162:1-6, 14-25), make his purchases (Pl. Dep. 128:17-24; 132:1-4; 142:25-143:4; 144:12-14; 145:1-4; 146:14-16), and exit the store (Pl. Dep. 135:10-14), just like any other customer. Thus, Plaintiff has not suffered any discrimination or injury in fact sufficient to give him standing under the ADA.

Plaintiff also cannot dispute that there is no real or immediate threat of future harm because Plaintiff admits that all of the alleged "barriers" at Defendant's store have been fixed, if they ever existed at all. And even assuming, for the sake of argument, that Plaintiff did have standing at the time of the his Complaint, he currently lacks standing to pursue ADA's exclusive remedy of injunctive relief.[19]

**B. Plaintiff's First Amended Complaint Does Not Demonstrate Standing**

In it April 18 Order, this Court pointed out that Plaintiff's proposed First Amended Complaint still did not meet the pleading requirements of *Chapman* because it contained a "jurisdictional flaw"—Plaintiff failed to demonstrate "a real and immediate threat of repeated injury in the future."[20] The Court stated that "Plaintiff can satisfy this standard either by demonstrating that the barriers he encountered deterred him from returning to the store or that he intends to return to a *noncompliant* facility."[21] The Court pointed out, however, that "plaintiff admitted in his sworn deposition testimony that he was not deterred from returning to the facilities. Indeed, he specifically stated that he returned to those facilities on a number of occasions."[22] The Court therefore stated that "plaintiff must, in his amended complaint, allege facts sufficient to demonstrate an immediate threat of future harm or the complaint will be subject to *sua sponte* dismissal pursuant to FRCP 12(b)(1)."[23]

In an apparent response, Plaintiff added a new allegation to his FAC: "Feezor intends to return (for a shoping excersion [*sic*]) at the LHBP [Hanesbrands] Facility within a year; and anticipates suffering, or has suffered (or both), *objective* discrimination because of these non-

---

[19] *See, e.g.*, 42 U.S.C. § 12188(a)(2) (the ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities"). *Accord White v. Divine Investments, Inc.*, 2005 WL 2491543, at *1, *7 (E.D. Cal., Oct. 7, 2005) (defendants' motion for summary judgment granted where all "the so-called 'barriers' do not constitute substantive violations of the ADA and/or have been remedied"); *Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d at 1145-48 (S.D. Cal. 2006) ("Because the only relief available under the ADA is injunctive, the fact the alleged barrier has been remedied renders the issue moot.").

[20] Memorandum and Order, April 18, 2011, 8, fn.4 (Dkt 50) quoting *Chapman*, 631 F.3d at 946.

[21] *Id.*

[22] *Id.*

[23] *Id.*

compliant facilities, which create a real and immediate threat of future injury."[24] However, this new allegation still does not establish standing. In light of Plaintiff's admission that the barriers alleged in his Complaint (and FAC) three of the four alleged barriers no longer exist, and the remaining alleged barrier (*i.e.*, door handles) did not deter or prevent his full and equal enjoyment, Plaintiff's conclusory allegation that he intends to return to Defendant's "non-compliant" store contradicts his sworn deposition testimony. Plaintiff, therefore, has failed to establish that required showing of "real and immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946.

**C. <u>Because Plaintiff Cannot Establish Standing As To Any Of The Alleged Barriers, Plaintiff Cannot Challenge Any Unencountered Or Unknown Barriers That May Be Discovered In The Requested Site Inspection And Should Therefore Be Barred From Inspecting Plaintiff's Store</u>**

Unless Plaintiff can establish that he has encountered or has personal knowledge of at least one alleged barrier related to his particular disability when he filed his Complaint, and has been deterred from attempting to gain access to the store because of the barrier, he cannot establish that he has standing—that he has suffered an injury in fact for the purpose of Article III of the U.S. Constitution. Without standing, Plaintiff cannot challenge any other possible barriers that may be in the store, much less demand an inspection to discover those possible barriers. *See Doran*, 524 F.3d at 1047 (allowing an ADA plaintiff who had established standing as a result of at least one barrier alleged in his complaint to challenge other subsequently discovered barriers).

Because Plaintiff cannot establish standing with respect to the barriers alleged in the FAC, he certainly cannot conduct a site inspection in an attempt to discover possible violations of the ADA Accessibility Guidelines ("ADAAG"). Although Plaintiff argues that he is entitled to conduct discovery as to any other barriers affecting his particular disability that he did not personally encounter or was unaware of, he must first establish standing as to at least one of the alleged ADAAG violations of which Plaintiff had knowledge and which deterred or prevented access to or full and equal enjoyment of Defendant's store. Plaintiff has failed to do so.

---

[24] FAC, ¶ 30 (Dkt 54).

Furthermore, Plaintiff's inspection request is an improper fishing expedition intended only to identify non-actionable alleged violations of the ADAAG that are unrelated and irrelevant to Plaintiff's claims against Defendant. And the results of Plaintiff's inspection of the current state of the facility will not result in the discovery of relevant or admissible evidence that will support Plaintiff's claims against Defendant or his opposition to Defendant's Motion for Summary Judgment because Plaintiff has already identified the alleged barriers at issue in his Complaint and provided testimony regarding the alleged barriers at his deposition as they existed during the visit that trigged Plaintiff's lawsuit. Plaintiff should therefore be barred from proceeding with the inspection of Defendant's store.

### D. If Plaintiff Is Allowed To Proceed With The Site Inspection, The Inspection Should Be Limited In Scope

If Plaintiff is permitted to inspect Defendant's store, the inspection should be limited to only those four barriers specifically identified in Plaintiff's FAC. Relying upon *Doran v. 7-Eleven, Inc.*, Plaintiff argues that his inspection should be allowed to encompass all "barriers (both policy and architectural) relating to plaintiff's specific disability."[25] However, in *Doran*, the Ninth Circuit held that plaintiff had established that he had been deterred from returning to the 7-Eleven store (which Plaintiff Feezor has not done), and reasoned that "[g]iven that an ADA plaintiff has standing because of deterrence from returning in the face of uncertainty [of the existence of other barriers], it is prudent to eliminate that uncertainty from the judicial device of discovery…." *Doran*, 524 F.3d at 1040-41, 1043.

Here, in contrast, **Plaintiff admitted that he has not been deterred from returning to Plaintiff's store despite the presence of alleged "barriers**." Since the visit that triggered the lawsuit, Plaintiff returned to the store at least once and made a purchase. (Pl. 130:12-135:14.) And the fact that Plaintiff visited the Hanesbrands store multiple times before and after the visit that triggered the lawsuit, even in the presence of alleged barriers, clearly demonstrates that there is no actual barrier deterring or preventing him from shopping at Defendant's store in the future. (Pl. 165:11-22.)

---

[25] Inspection Request, March 18, 2011, p.2 (Dkt 34-1).

Because Plaintiff has not been deterred from subsequently visiting the store by the barriers alleged in the FAC, he should not be allowed to inspect and challenge any unencountered or unknown barriers.

Moreover, if Plaintiff is permitted to inspect Defendant's store, the inspection should take place outside of business hours in order to minimize the disruption to Defendant's business operations and avoid privacy issues that may arise should Plaintiff photograph Defendant's customers. Further, the individuals who may attend the inspection on behalf of Plaintiff should be limited to Plaintiff, his counsel, and Plaintiff's expert witness.

**E. Defendant's Conclusion**

For the reasons set forth above in Section IV, Defendant respectfully requests that the Court issue a Protective Order prohibiting Plaintiff's inspection of Defendant's facility or, in the alternative: (1) staying Plaintiff's inspection unless and until Plaintiff establishes that he has standing to pursue his claims against Defendant and (2) if Plaintiff establishes standing, and the inspection is allowed to go forward, limiting the scope of the inspection to only those alleged barriers specifically identified by Plaintiff in his Complaint; requiring that the inspection take place outside of business hours in order to minimize the disruption to Defendant's business operations and avoid privacy issues that may arise should Plaintiff photograph Defendant's customers; and limiting the individuals who may attend the inspection to Plaintiff, Plaintiff's counsel, and Plaintiff's expert witness.

## VI. PLAINTIFF'S CONTENTIONS

The defense's position would appear less frivolous if the Honorable Frank C. Damrell, Jr., had not rejected their arguments the very same day this motion was filed. Specifically, Judge Damrell concluded that Lary Feezor had standing to pursue his ADA claim and granted a Rule 56(d) continuance so that he (Feezor) could pursue the very site inspection that the defense is now seeking to prevent. *See Feezor v. Patterson*, 2011 WL 1466897 (E.D. Cal. Apr. 18, 2011). Their position is, thus, unjustified and without merit; and we would ask the court to deny their motion.

**A. <u>The Honorable Frank C. Damrell, Jr., Has Already Held That Defendant's Position – *i.e.*, Feezor Lacked Standing Because He Could Enter Their Stores And Make His Purchases – Is "Unpersuasive" And A "Misapplication" Of Ninth Circuit Authority.</u>**

This is not the first time the defense (*viz.*, Hanes and Eddie Bauer) has argued that Feezor did not suffer an injury-in-fact because the alleged barriers he encountered did not deprive him of "entry or full use of the facility." Relying on his deposition testimony, which acknowledges that he was not actually prevented from entering or using their facilities, the defense made the same argument to Judge Damrell on March 25, 2011 – *i.e.*, Feezor lacked standing to pursue his ADA claim because he could enter their stores and make his purchases, (*Docket Nos. 36, 37*) – in an attempt to convince the court that the proposed amendments to the complaint would be futile. *See Patterson*, 2011 WL 1466897 at *3, citing *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011). Judge Damrell not only rejected their argument out of hand, he called it a misapplication of the Ninth Circuit standards they cite for support. *Id.* at **3-4, citing *Chapman*, 631 F.3d at 947 ("Based on the standard articulated in *Chapman*, it is immaterial that plaintiff was able to access the facility, as long as he encountered a noncompliant barrier related to his particular disability, and that barrier affected his access in a manner that would not affect a patron without a similar disability."). Judge Damrell further held that disabled plaintiffs can establish standing by either demonstrating that (1) the barriers they encountered deterred them from returning to the store, or (2) that they intend to return to a *noncompliant* facility. *Id.* at *4, n. 4, citing *Chapman*, 631 F.3d at 950 (italics in original). Because Feezor admitted in his sworn deposition testimony that he was not deterred from returning to the facilities (and, in fact, had returned on a number of occasions), Judge Damrell ordered him to amend his complaint, and allege that he intended to return to the defendants' noncompliant facility, which he did on April 26, 2011. *Compare Ibid., with Docket No. 54, ¶¶ 30, 33* (FAC).

Turning to plaintiff's request for a continuance of the defendants' motions for summary judgment under Rule 56(d), Judge Damrell noted that Feezor asked for the opportunity to conduct the following discovery: (1) inspect Eddie Bauer's and Hanes' stores; (2) identify and document the barriers alleged in plaintiff's complaint; (3) obtain expert testimony on those

barriers; and (4) obtain building records demonstrating when/how the stores were designed. *Id.* at *4. In support of his request, Feezor attached the very same Rule 34 inspection demand at issue in this protective order. *See Docket No. 34-1, pp. 5-11.* In opposition to his request, Hanes and Eddie Bauer, once again, argued that Feezor lacked standing because he could enter their stores and make his purchases. *Ibid.* ("in opposition to plaintiff's motion to continue, defendants offer arguments that are essentially duplicative of their arguments in opposition to plaintiff's motion to amend."). And, once again, Judge Damrell found these requests "unpersuasive" for the reasons stated above. *Ibid.* In so doing, Judge Damrell noted that the *Chapman* court held that when a disabled plaintiff (*e.g.*, Feezor) has suffered an injury-in-fact, he has standing to seek injunctive relief addressing not only barriers that he encountered, but also "existing barriers that he is reasonably likely to encounter." *Id.* at *5, citing *Chapman*, 631 F.3d at 953(" if further discovery reveals barriers that relate to plaintiff's disability that he did not encounter, he would have standing to seek injunctive relief based on those ADA violations as well as those he actually encountered."). Judge Damrell thus granted plaintiff's Rule 56(d) application so that he could inspect the defendants' facilities and discover both encountered *and unencountered* barriers. *Ibid.*

Hanes and Eddie Bauer's argument that Feezor lacks standing because he was not deterred from visiting their stores, and that his inspection should be limited to the barriers he actually encountered (and listed in his complaint), is in direct conflict with Judge Damrell's April 18th order. Moreover, if Feezor lacked standing because he could use Eddie Bauer and Hanes' stores, as the defense suggested and the evidence unequivocally showed, Judge Damrell never would have allowed him (Feezor) to amend the complaint or conduct discovery. Instead, Judge Damrell would have found the proposed amendments "futile" and denied Feezor's motion in its entirety. And while the defense claims that the First Amended Complaint again fails to allege constitutional standing, they have yet to move to dismiss that complaint for violating the *Chapman* standard, or explain why such a motion would produce a different result, *e.g.*, a change in controlling law. Until they do (or, more accurately, until Judge Damrell agrees with them that

Feezor lacks standing), their position is frivolous *ab initio* and we would ask the court to deny their motion as such.

**B. <u>Hanes And Eddie Bauer's Interpretation Of The Ninth Circuit's Holding In *Doran v. 7-Eleven, Inc.* Runs Afoul Of The Plain Text Of That Opinion, The Ninth Circuit's Analysis Of The Same In *Chapman v. Pier 1 Imports*, And Should, Thus, Be Rejected As Baseless And Unfounded.</u>**

At the risk of accusing the defense of willfully presenting a false argument, the Ninth Circuit *explicitly* held in *Chapman v. Pier 1 Imports*, that a disabled plaintiff does not need to be deterred from visiting a facility in order to have standing under the ADA, or to seek the removal of unknown/unencountered barriers from a facility:

> We now clarify that when an ADA plaintiff has suffered an injury-in-fact by encountering a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability, he has standing to sue for injunctive relief as to that barrier and other barriers related to his disability, even if he is not deterred from returning to the public accommodation at issue. First, we hold that an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, *or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility*. Second, we hold that an ADA plaintiff who establishes standing as to encountered barriers *may also sue for injunctive relief as to unencountered barriers related to his disability*.

*Chapman*, 631 F.3d at 944 (italics added). This holding was not "new" to the defense, as they cited the *Chapman* opinion to Judge Damrell *ad nauseam* when they thought it would be to their advantage. *See, e.g.*, *Patterson*, 2011 WL 1466897 at *3. When Judge Damrell rejected their interpretation of *Chapman*, Hanes and Eddie Bauer needed a new source of authority to conceal the frivolousness of their position, which brings us to *Doran v. 7-Eleven, Inc.* According to the defense, *Doran* stands for the proposition that a disabled plaintiff must be deterred before they can bring a claim for injunctive relief under the ADA. But like *Chapman*, the defense's interpretation of *Doran* cannot withstand close scrutiny.

One need only read the *Chapman* opinion to see that the defense is, once again, misapplying the Ninth Circuit authority. Regardless of how the defense interprets it, the Ninth Circuit interprets *Doran* to stand for the proposition that "it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility

in any way. Rather, the barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Chapman*, 631 F.3d at 947, citing, *inter alia*, *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041, n.4 (9th Cir.2008). In fact, the Ninth Circuit took great pains to reiterate that *Doran* stood for the proposition that, once a disabled individual has encountered or becomes aware of alleged ADA violations that deters his patronage of *or otherwise interfere with his access to* a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III. *Ibid.*, quoting *Doran*, 524 F.3d at 1042, n. 5. Once that minimal threshold is met, the disabled plaintiff has standing, under *Doran*, to challenge <u>all barriers</u> that are related to their specific disability. *See Chapman*, 631 F.3d at 950-51, quoting *Doran*, 524 F.3d at 1047 ("[a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability."). On this point the *Chapman* court reiterated that *Doran* <u>did not</u> limit the applicability of its holding to ADA cases where standing is predicated upon deterrence. See *Chapman*, 631 F.3d at 951, n. 7, citing *Doran*, 524 F.3d at 1042 ("[I]t is not an essential prerequisite of an ADA plaintiff's standing that he prove that deterrence caused by previously encountered violations was the reason that a particular violation was not discovered and hence alleged in his complaint.").

Hanes and Eddie Bauer's views of *Doran – i.e.*, a disabled plaintiff must personally encounter the barriers related to his disability, and because of the barrier, be unable to fully access the facility – are, thus, undercut by the plain text of that opinion and the *Chapman* analysis of the same, as Judge Damrell explained to them once before. *See, e.g.*, *Patterson*, 2011 WL 1466897 ** 3-5. In fact, a cursory reading of the defense's contentions regarding *Doran* reveals that their position is <u>identical</u> to the original three-judge panel's analysis in *Chapman*, which was then vacated by the *en banc* panel. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 571 F.3d 853 (9th Cir. 2009), vacated 593 F.3d 974 (9th Cir. 2010). Phrased somewhat differently, if the defense's views on deterrence, barrier removal and *Doran* had merit, the Ninth Circuit never would have granted our petition for rehearing *en banc* in the first place. Because they cannot

survive the crushing weight of this Ninth Circuit authority, their request is without merit, and their attempt to prevent a site inspection, which Judge Damrell *explicitly* ordered, must fail.

**C. Defendants Never Met And Conferred On Their Proposed Limits For The Site Inspection And We Would Ask The Court To Disregard This Eleventh Hour Issue.**

If the inspection is allowed, Hanes and Eddie Bauer ask the court to restrict that inspection to (1) outside of business hours; and (2) limit that inspection to Feezor, his counsel, and his expert witness. As to the former, we have no objection to scheduling the inspection to a time that is convenient for the defense – that was never an issue. As to the latter, since we are agreeable to an inspection outside of business hours (with minimal inconvenience to Hanes and Eddie Bauer's operations), who shows up to that inspection should be of no consequence to the defense. By way of example, if the licensed contractor wants to bring someone to help him take measurements, he should be allowed to bring them. If the architect wants to bring someone to take photographs, he should be allowed them, too. No explanation is given for this artificial restriction and we would ask the court to deny their request to limit the individuals who can attend.

///

///

///

///

///

///

///

///

///

///

///

///

///

## VII. DEFENDANT'S CONCLUSION

The parties remain unable to agree as to the proper disposition of Plaintiff's demand to inspect Defendant's facility in Anderson, California. The parties, therefore, submit this issue as detailed in the parties' Joint Statement prepared pursuant to Local Rule 251 for the Court's resolution.

DATED: May 5, 2011

SEYFARTH SHAW LLP

By: *<u>/s/ Jon D. Meer</u>*
JON D. MEER
Attorneys for Defendant
HANESBRANDS INC.

DATED: May 5, 2011

DISABLED ADVOCACY GROUP, APLC

By: *<u>/s/ Lynn Hubbard III</u>*
LYNN HUBBARD III
Attorneys for Plaintiff
LARY FEEZOR